IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

PATRICK E. CALLAHAN,                           )
Kansas City, Kansas  66111,                    )
                                               )
                    Plaintiff,                 )
                                               )
v.                                             )   Case No.  2:11-CV-02621-WEB-KMH
                                               )
THE UNIFIED GOVERNMENT OF                      )
WYANDOTTE COUNTY/KANSAS CITY,                  )
KANSAS                                         )
c/o Bridgette D. Cobbins, Clerk,               )
707 N. 7th Street, Room 323                    )
Kansas City, Kansas  66101,                    )
                                               )
and                                            )
                                               )
RICK ARMSTRONG, Chief of Police,               )
in his official and individual capacities,     )   JURY TRIAL DEMANDED
c/o Kansas City, Kansas Police Department       )
700 Minnesota Avenue,                          )
Kansas City, Kansas  66101,                    )
                                               )
and                                            )
                                               )
KEVIN STEELE, Assistant Chief of Police,       )
in his official and individual capacities,     )
c/o Kansas City, Kansas Police Department       )
700 Minnesota Avenue,                          )
Kansas City, Kansas  66101,                    )
                                               )
and                                            )
                                               )
TERRY ZIEGLER, Assistant Chief of Police,      )
in his official and individual capacities,     )
c/o Kansas City, Kansas Police Department       )
700 Minnesota Avenue,                          )
Kansas City, Kansas  66101,                    )
                                               )
and                                            )
                                               )

TERENCE HALL, Assistant Chief of Police,   )
in his official and individual capacities,   )
c/o Kansas City, Kansas Police Department   )
700 Minnesota Avenue,   )
Kansas City, Kansas  66101,   )
   )
and   )
   )
JAMES BROWN, Assistant Chief of Police,   )
in his official and individual capacities,   )
c/o Kansas City, Kansas Police Department   )
700 Minnesota Avenue,   )
Kansas City, Kansas  66101,   )
   )
and   )
   )
TYRONE GARNER, Major,   )
in his official and individual capacities,   )
c/o Kansas City, Kansas Police Department   )
700 Minnesota Avenue,   )
Kansas City, Kansas  66101,   )
   )
and   )
   )
VINCE DAVENPORT, Major,   )
in his official and individual capacities,   )
c/o Kansas City, Kansas Police Department   )
700 Minnesota Avenue,   )
Kansas City, Kansas  66101,   )
   )
and   )
   )
GARY WOHLFORTH, Major,   )
in his official and individual capacities,   )
c/o Kansas City, Kansas Police Department   )
700 Minnesota Avenue,   )
Kansas City, Kansas  66101,   )
   )
and   )
   )
THOMAS McMILLAN, Major,   )
in his official and individual capacities,   )
c/o Kansas City, Kansas Police Department   )
700 Minnesota Avenue,   )

Kansas City, Kansas  66101,                          )
                                                     )
and                                                  )
                                                     )
GREG LAWSON, Captain,                                )
in his official and individual capacities,           )
c/o Kansas City, Kansas Police Department            )
700 Minnesota Avenue,                                )
Kansas City, Kansas  66101,                          )
                                                     )
and                                                  )
                                                     )
MICHAEL YORK, Captain,                               )
in his official and individual capacities,           )
c/o Kansas City, Kansas Police Department            )
700 Minnesota Avenue,                                )
Kansas City, Kansas  66101,                          )
                                                     )
and                                                  )
                                                     )
CURTIS NICHOLSON, Captain,                           )
in his official and individual capacities,           )
c/o Kansas City, Kansas Police Department            )
700 Minnesota Avenue,                                )
Kansas City, Kansas  66101,                          )
                                                     )
and                                                  )
                                                     )
JOHN DOES I - X, Kansas City, Kansas                 )
police commanders, officers, and/or Unified          )
Government officials charged with the                )
training and supervision of the above listed         )
Defendants or who committed acts and                 )
omissions as herein alleged in their official        )
and individual capacities,                           )
                                                     )
                              Defendants.             )

## FIRST AMENDED COMPLAINT

COMES NOW Patrick E. Callahan, by his attorneys, and states and alleges the

following for his causes of action against Defendants Unified Government of Wyandotte

3

County/Kansas City, Kansas, Police Chief Rick Armstrong, Assistant Chief Kevin Steele, Assistant Chief Terry Ziegler, Assistant Chief Terence Hall, Assistant Chief James Brown, Major Tyrone Garner, Major Vince Davenport, Major Gary Wohlforth, Major Thomas McMillan, Captain Greg Lawson, Captain Michael York, Captain Curtis Nicholson, and John Does I-X:

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues raised herein.

### DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial.

### PARTIES

1.  Plaintiff Patrick E. Callahan is a Kansas City, Kansas Police Officer, and, at all times relevant hereto, was a resident of Kansas City, Wyandotte County, Kansas and a citizen of the United States.

2.  Pursuant to the authority granted by the Consolidation Act, K.S.A. § 12-340 *et seq.*, Defendant Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government") is a consolidated government which is a county with all the powers, functions, and duties afforded to counties under the Kansas Constitution and statutes and is also a city of the first class with all the powers, functions, and duties afforded to cities of the first class under the Kansas Constitution and statutes.  The Unified Government has the power to sue and be sued and to exercise such other and further powers as may be conferred by the constitution or statutes of the State of Kansas.

3.  Defendant Rick Armstrong, at all times relevant hereto, was the Chief of Police for

the Kansas City, Kansas Police Department ("KCKPD").  On information and belief, Defendant Armstrong has final policymaking authority regarding law enforcement operations of the KCKPD, and primary responsibility for administration of activities and services of the KCKPD and for the training and supervision of KCKPD personnel.  In addition, Defendant Armstrong participated personally in the acts and omissions giving rise to this suit and/or failed to intervene to stop such acts and omissions.  Defendant Armstrong is sued in his official capacity as Police Chief and in his individual capacity.

4.   Defendant Kevin Steele, on information and belief, was, at all times relevant hereto, an Assistant Chief of Police with the KCKPD and commander of the KCKPD Services Bureau.  In addition, Defendant Steele participated personally in the acts and omissions giving rise to this suit.  Defendant Steele is sued in his official capacity as an Assistant Police Chief and commander with the KCKPD and in his individual capacity.

5.   Defendant Terry Ziegler, on information and belief, was, at all times relevant hereto, an Assistant Chief of Police with the KCKPD and commander of the KCKPD Operations Bureau.  In addition, Defendant Ziegler participated personally in the acts and omissions giving rise to this suit.  Defendant Ziegler is sued in his official capacity as an Assistant Police Chief and commander with the KCKPD and in his individual capacity.

6.   Defendant Terence Hall, on information and belief, was, at all times relevant hereto, an Assistant Chief of Police with the KCKPD and commander of the KCKPD Criminal Investigation Bureau.  In addition, Defendant Hall participated personally in the acts and omissions giving rise to this suit.  Defendant Hall is sued in his official capacity as an Assistant Police Chief and commander with the KCKPD and in his individual capacity.

7.  Defendant James Brown, on information and belief, was, at all times relevant hereto, an Assistant Chief of Police with the KCKPD and a resident of Kansas City, Kansas. In addition, Defendant Brown participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant Brown is sued in his official capacity as an Assistant Chief in the KCKPD and in his individual capacity.

8.  Defendant Tyrone Garner, on information and belief, was, at all times relevant hereto, a major in the KCKPD and a resident of Kansas City, Kansas.  In addition, Defendant Garner participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant Garner is sued in his official capacity as a major in the KCKPD and in his individual capacity.

9.  Defendant Vince Davenport, on information and belief, was, at all times relevant hereto, a major in the KCKPD and a resident of Kansas City, Kansas.  In addition, Defendant Davenport participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant Davenport is sued in his official capacity as a major in the KCKPD and in his individual capacity.

10.  Defendant Gary Wohlforth, on information and belief, was, at all times relevant hereto, a major in the KCKPD and a resident of Kansas City, Kansas.  In addition, Defendant Wohlforth participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant Wohlforth is sued in his official capacity as a major in the KCKPD and in his individual capacity.

11.  Defendant Thomas McMillan, on information and belief, was, at all times

relevant hereto, a major in the KCKPD and a resident of Kansas City, Kansas.  In addition, Defendant McMillan participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant McMillan is sued in his official capacity as a major in the KCKPD and in his individual capacity.

12.  Defendant Greg Lawson, on information and belief, was, at all times relevant hereto, a captain in the KCKPD and a resident of Kansas City, Kansas.  In addition, Defendant Lawson participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant Lawson is sued in his official capacity as a major in the KCKPD and in his individual capacity.

13.  Defendant Michael York, on information and belief, was, at all times relevant hereto, a captain in the KCKPD and a resident of Kansas City, Kansas.  In addition, Defendant York participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant York is sued in his official capacity as a major in the KCKPD and in his individual capacity.

14.  Defendant Curtis Nicholson, on information and belief, was, at all times relevant hereto, a captain in the KCKPD and a resident of Kansas City, Kansas.  In addition, Defendant Nicholson participated personally in the acts and omissions giving rise to this Complaint and/or failed to intervene to stop such acts and omissions.  Defendant Nicholson is sued in his official capacity as a major in the KCKPD and in his individual capacity.

15.  Defendants John Doe I-X, on information and belief, were, at all times relevant hereto, KCKPD commanders, officers, or Unified Government officials charged with training and/or supervision of Defendants Armstrong, Steele, Ziegler, and Hall and/or were

7

participants in the acts and omissions giving rise to this Complaint.  Defendants Doe I-X are sued in their official and individual capacities.

16.  The acts and omissions of Defendants Armstrong, Steele, Ziegler, Hall, Brown, Garner, Davenport, Wohlforth, McMillan, Lawson, York, Nicholson, (who may be referred to herein collectively as "the Defendant Commanders") and Does I-X were committed by them while acting under color of state law and the regulations, policies, procedures, practices, customs, and usages of the Unified Government of Wyandotte County/Kansas City, Kansas and the Kansas City, Kansas, Police Department.

### JURISDICTION AND VENUE

17.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343, 1331, and 1332 as Plaintiff's claims of deprivation of constitutional and other rights brought pursuant to 42 U.S.C. § 1983 (Counts I - VI).  In addition, under 28 U.S.C. § 1367, this Court has jurisdiction of Plaintiff's state law claims (Counts VII - XVI) which are so related to each other and to the federal claims herein pleaded that they form part of the same case or controversy under Article III of the United States Constitution.

18.  This Court has jurisdiction over all Defendants because the unlawful acts alleged in this Complaint were committed in Kansas City, Wyandotte County, Kansas, which lies within the District of Kansas.

19.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in Kansas City, Wyandotte County, Kansas, which lies within the District of Kansas, and because Defendants Armstrong, Steele, Ziegler, Hall, Brown, Garner, Davenport, Wohlforth, McMillan, Lawson,

York, Nicholson, and Does I-X perform their duties and responsibilities within, and the Unified Government is located in the District of Kansas.

### GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

20.  On January 4, 2011, Plaintiff Callahan was part of a ten-man SCORE team that had been assigned to conduct a search at a residence located at 730 Everett Avenue, Kansas City, Kansas.  SCORE is the tactical component of the KCKPD, often referred to elsewhere as a SWAT team.  Unbeknownst to Plaintiff, the search of the Everett Avenue residence was part of a sting operation targeting members of the SCORE team in which certain items had been planted at the residence to determine whether any of the SCORE team members would steal the items.

21.  The search of the residence was to be conducted at about noon on January 4, 2011.

22.  When the team arrived at the Everett Avenue residence, all ten members of the team, including Plaintiff Callahan, entered the residence to clear it of occupants.

23.  When the officers entered, there were no occupants in the residence.

24.  Within minutes, Plaintiff Callahan left the inside of the residence to take his assigned position covering the front entrance from the exterior of the residence and he remained outside the residence for the remainder of the search.

25.  Some defendants and/or the FBI conducted video surveillance of the Everett Avenue residence during the sting operation and were aware that Plaintiff had not removed anything from the residence.

26.  After the conclusion of the search, Plaintiff and the other members of the team

were ordered to board the police van in which the team had arrived at the Everett Avenue residence.  Plaintiff and the other members of the team were told they were going to a second location to conduct another search.

27.  However, when the team members got in the van, KCKPD Sergeant Matt Cross was in the driver's seat and KCKPD Sergeant George Sims was next to him in the passenger seat.  Neither of them were members of the SCORE team.

28.  Instead of going to a second location for another search, Sergeant Cross drove the van containing Plaintiff and the other team members into the basement parking garage of Police Headquarters at 700 Minnesota Avenue, Kansas City, Kansas.  While  Plaintiff and the others were being transported to the KCKPD, Defendant Nicholson placed himself near the side door of the van as if guarding the door.

29.  The van was met in the garage by Defendants Armstrong, Brown, Davenport, Garner, Hall, Lawson, McMillan, Steele, Wohlforth, York, and Ziegler and, upon information and belief, one or more of the John Doe Defendants, each of whom was wearing a tactical vest.  Defendants Armstrong, Steele, Brown, McMillan, and York pointed an assault rifle at the Plaintiff; Defendants Davenport, Garner, Hall, Lawson, Steele and Ziegler were pointing assault weapons at other team members, all of which was in violation of KCKPD procedure.  KCKPD officers are trained never to point a weapon at a person unless they are willing to use lethal force.  At one point, Defendant York, who appeared to be the most aggressive and reckless with his weapon, pointed his assault weapon directly into the van.

30.  Defendant Armstrong shouted that the entire SCORE team, including Plaintiff,

10

was under arrest and if they did not cooperate, they would be fired..  Thus, although Plaintiff was presented with and signed a written consent, it was not lawful and, rather, was coerced. All ten of the team members were ordered to vacate the van, and they were disarmed, searched, placed under arrest, and detained, while under gun point and/or in the custody of the Defendant Commanders and some of the John Doe defendants.

31.  When Plaintiff Callahan was searched in the basement of Police Headquarters, nothing illegal, improper, stolen, or in violation of KCKPD orders or rules was found on his person or under his control nor was anything illegal, improper, stolen, or in violation of KCKPD orders or rules found to be associated with or in any way related to Plaintiff Callahan.  In twenty-six years of service, there had never been a complaint of Plaintiff stealing anything.

32.  Because nothing illegal, improper, stolen, or otherwise in violation of KCKPD orders or rules was found on, associated with, or related to Plaintiff Callahan, there was no probable cause to arrest him, nor reasonable suspicion to detain him.

33.  Despite the absence of any probable cause to arrest Plaintiff Callahan, he was told he was under arrest and not free to leave.

34.  Plaintiff Callahan was continuously in the custody of one or more of the Defendant Commanders—and some of the John Doe defendants – and was even escorted by such commanders while using the restroom – and was under arrest and detained until approximately 2:00 a.m. on the morning of January 5, 2011.

35.  Upon information and belief, at various times while Plaintiff Callahan was in the custody of the Defendant Commanders and the John Doe defendants, they shouted

11

inconsistent commands while pointing their assault rifles at Plaintiff and the other SCORE team members.  Plaintiff was uncertain which commands to follow and feared for his life.

36.  Plaintiff's fear was intensified by his knowledge that it had been a very long time since most of the Defendant Commanders had used an assault weapon and because the weapons the Defendants were pointing were capable of penetrating their bullet-proof vests.

37.  Plaintiff's fear was also intensified because Defendant Armstrong was screaming and appeared to be out of control.

38.  Plaintiff complied with all of the Defendant Commanders' commands to the best of his ability and did not attempt to flee or otherwise evade arrest.

39.  Because the acts and omissions of the Defendant Commanders and some of the John Doe defendants were planned, adopted, and carried out by the highest decision-making authorities in the KCKPD, said acts and omissions constituted the policy, custom, and practice of Defendant Unified Government.

40.  The acts, omissions, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants as alleged herein were the product of a failure to train and/or inadequate training of said defendants.  Alternatively, the acts, omissions, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants as alleged herein were the product of a failure to supervise and/or inadequately supervise said defendants.  Alternatively, the acts, omissions, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants as alleged herein were the product of a negligent failure to train and/or negligently inadequate training of said defendants, or, alternatively, were the product of a negligent failure to supervise and or negligently

inadequate supervision of said defendants.

41.  Within the Unified Government and the KCKPD there exists some employee hiring, training, supervision, and retention policies, procedures, practices that are so pervasive that they constitute the policy of the Unified Government and the KCKPD and were the moving force behind and thereby caused the constitutional deprivations suffered by Plaintiff as herein alleged; alternatively, there has been a failure to adopt employee hiring, training, supervision, and retention policies, practices, and procedures which would have prevented the constitutional deprivations suffered by Plaintiff as herein alleged.

42.  Defendants Unified Government, Armstrong, certain other Defendant Commanders and various John Doe defendants were and are aware of the hiring, training, supervision, and retention policies, procedures, practices, and usages for the KCKPD, and knew or should have known that such policies, procedures, practices, and usages, or the absence of same, presented a risk and/or unnecessarily increased the risk of constitutional violations of the rights of citizens and harm to fellow officers including Plaintiff.

43.  The failure of Defendants Unified Government, Armstrong, certain other Defendant Commanders and various John Doe Defendants to affirmatively act in the face of policies, procedures, practices, and usages for the KCKPD which resulted in constitutionally violative conduct establishes a policy to condone and otherwise tolerate constitutionally violative conduct in general and, specifically, the constitutionally violative conduct alleged in this Amended Complaint.  Had Defendants Unified Government, Armstrong, certain other Defendant Commanders and various John Doe Defendants acted affirmatively to establish hiring, training, supervision and retention policies, procedures, practices, and usages for the

13

KCKPD which were reasonably calculated to ensure that officers were properly hired, trained, supervised, and retained or dismissed, the constitutional deprivations suffered by Plaintiff would not have occurred.

44. Each of the defendants had a duty and opportunity to intervene to prevent and/or end the unlawful arrest, detention of, use of force upon and the other deprivations and injuries inflicted upon Plaintiff and each of them failed to do so.

45. Even though one of the Defendants stated that Plaintiff was not involved in any illegal activity at the Everett Avenue residence, and even though nothing illegal, improper, stolen, or in violation of any KCKPD order or rule was found during the search of Plaintiff, as a result of the actions, omissions, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants, all of which constituted the policy, custom, and practice of Defendant Unified Government, Defendant Armstrong, and one or more of the John Doe Defendants who have final policymaking authority regarding law enforcement operations of the KCKPD, Plaintiff was disarmed, detained, and unlawfully arrested at gun point by law enforcement officers whom he knew to have been trained never to point guns at persons without being prepared to use lethal force, and, accordingly, experienced fear and apprehension; he was assaulted and battered while being removed from the van and searched; Defendant Lawson strip-searched him in the parking bay while in the presence of other officers; Defendant Lawson took Plaintiff into a separate room near the elevator from the parking pay and interrogated him as though he were a criminal in the absence of legal counsel or a union representative; he was unlawfully held for nearly twelve hours in insulting, humiliating, and embarrassing circumstances that included being escorted by an

armed officer while using the restroom; he was subsequently assigned to administrative duties for approximately one month during which he was further humiliated and embarrassed; he was required to pay legal fees for his defense; he suffered, continues to suffer, and will in the future suffer anxiety, psychological trauma, fear, mental pain and suffering, impacting his personal and professional life, having been diagnosed by two doctors and a counselor as suffering from post traumatic stress disorder, and he continues to require care and treatment for that condition. Further, as a result of the acts and omissions of each of the Defendants, all of which constituted the policy, custom, and practice of Defendant Unified Government, Plaintiff suffered damage to his reputation. Plaintiff suffered and will continue to suffer lost promotional opportunities within the KCKPD, lost overtime opportunities, and/or lost wages from off-duty work he could not perform.

46. Alternatively, the acts and omissions of each of the Defendant Commanders that caused Plaintiff injuries as alleged herein, and the bases for such acts or omissions, were ratified by Defendant Armstrong and/or one or more of the John Doe defendants who have final policymaking authority regarding law enforcement operations of the KCKPD such that said acts and omissions constituted the policy, custom, and practice of Defendant Unified Government.

47. The acts, omissions, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants were driven by an evil motive or intent, or involved a reckless or callous indifference to or disregard of Plaintiff's constitutional and other legal rights by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be proved at trial.

COUNT I
UNLAWFUL ARREST AND DETENTION
42 U.S.C. § 1983
**Fourth and Fourteenth Amendments to the Constitution of the United States**
**(Against Defendant Commanders and Various Doe Defendants)**

48.   Plaintiff hereby incorporates by reference paragraphs 1 through 47 as if fully set forth here.

49.   After the search of Plaintiff yielded nothing illegal, improper, stolen, or in violation of KCKPD orders or rules on his person nor was anything illegal, improper, stolen, or in violation of KCKPD orders or rules found to be associated with or related to Plaintiff Callahan, a reasonable officer would not believe that Plaintiff had committed or was committing an offense and would not believe that there was reasonable suspicion to detain or probable cause to arrest Plaintiff and to confine him for nearly twelve hours.

50.   The Defendant Commanders and some of the John Doe defendants knew or should have known that under the United States Constitution there is a clearly established prohibition against an arrest and detention without probable cause and that their actions violated Plaintiff's constitutional rights.

51.   The acts or omissions of the Defendant Commanders and some of the John Doe defendants were under color of state law.

52.   As alleged, *supra* at paragraph 45, as a result of the actions, omissions, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants, Plaintiff was disarmed, detained, and unlawfully arrested at gun point by law enforcement officers whom he knew to have been trained never to point guns at persons without being prepared to use lethal force, and, accordingly, experienced fear and apprehension; he was assaulted and

16

battered while being removed from the van and searched; Defendant Lawson strip-searched him in the parking bay while in the presence of other officers; Defendant Lawson took Plaintiff into a separate room near the elevator from the parking pay and interrogated him as though he were a criminal in the absence of legal counsel or a union representative; he was unlawfully held for nearly twelve hours in insulting, humiliating, and embarrassing circumstances that included being escorted by an armed officer while using the restroom; he was subsequently assigned to administrative duties for approximately one month during which he was further humiliated and embarrassed; he was required to pay legal fees for his defense; he suffered, continues to suffer, and will in the future suffer anxiety, psychological trauma, fear, mental pain and suffering, impacting his personal and professional life, having been diagnosed by two doctors and a counselor as suffering from post traumatic stress disorder, and he continues to require care and treatment for that condition.  Further, as a result of the acts and omissions of each of the Defendants, all of which constituted the policy, custom, and practice of Defendant Unified Government, Plaintiff suffered damage to his reputation.  Plaintiff suffered and will continue to suffer lost promotional opportunities within the KCKPD, lost overtime opportunities, and/or lost wages from off-duty work he could not perform.

53.  As alleged, *supra* at paragraph 47, the acts and omissions of the Defendant Commanders and some of the John Doe defendants were driven by an evil motive or intent, or involved a reckless or callous indifference to or disregard of Plaintiff's constitutional and other legal rights by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be proved at trial.

54.  Plaintiff is entitled to recover from the Defendant Commanders and some of the John Doe defendants his reasonable attorneys' fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT II**
**DENIAL OF DUE PROCESS**
**42 U.S.C. § 1983**
**Fifth and Fourteenth Amendments to the Constitution of the United States**
**(Against Defendant Commanders and Various Doe Defendants)**

55.  Plaintiff hereby incorporates paragraphs 1 through 47 as if fully set forth here.

56.  The conduct of the Defendant Commanders and some of the John Doe defendants as herein above alleged, particularly arresting and detaining Plaintiff without probable cause, deprived Plaintiff of his right not to be deprived of liberty without due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States.

57.  The acts, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants were under color of state law.

58.  The Defendant Commanders and some of the John Doe defendants knew or should have known that the arrest and detention of Plaintiff in the absence of probable cause violated Plaintiff's constitutional right to due process of law.

59.  The acts, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants caused Plaintiff to suffer actual damage as set forth, *supra* at paragraph 45, in that, as a result of the actions, omissions, conduct, and behavior of the Defendant Commanders and some of the John Doe defendants, Plaintiff was disarmed, detained, and unlawfully arrested at gun point by law enforcement officers whom he knew to have been trained never to point guns at persons without being prepared to use lethal force, and,

accordingly, experienced fear and apprehension; he was assaulted and battered while being removed from the van and searched; Defendant Lawson strip-searched him in the parking bay while in the presence of other officers; Defendant Lawson took Plaintiff into a separate room near the elevator from the parking pay and interrogated him as though he were a criminal in the absence of legal counsel or a union representative; he was unlawfully held for nearly twelve hours in insulting, humiliating, and embarrassing circumstances that included being escorted by an armed officer while using the restroom; he was subsequently assigned to administrative duties for approximately one month during which he was further humiliated and embarrassed; he was required to pay legal fees for his defense; he suffered, continues to suffer, and will in the future suffer anxiety, psychological trauma, fear, mental pain and suffering, impacting his personal and professional life, having been diagnosed by two doctors and a counselor as suffering from post traumatic stress disorder, and he continues to require care and treatment for that condition.  Further, as a result of the acts and omissions of each of the Defendants, all of which constituted the policy, custom, and practice of Defendant Unified Government, Plaintiff suffered damage to his reputation.  Plaintiff suffered and will continue to suffer lost promotional opportunities within the KCKPD, lost overtime opportunities, and/or lost wages from off-duty work he could not perform.

60.  As alleged, *supra* at paragraph 47, the acts and omissions of the Defendant Commanders and some of the John Doe defendants were driven by an evil motive or intent, or involved a reckless or callous indifference to or disregard of Plaintiff's constitutional and other legal rights by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be proved at trial.

61.  Plaintiff is entitled to recover from the Defendant Commanders and some of the John Doe defendants his reasonable attorneys' fees and expenses, as provided by 42 U.S.C. § 1988.

## COUNT III
### POLICIES, PROCEDURES, AND PRACTICES UNDER 42 U.S.C. § 1983
**(Against Defendants Unified Government, Armstrong, and Various Doe Defendants)**

62.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 61 of this Amended Complaint as if fully set forth here.

63.  Because the acts and omissions of the Defendant Commanders and some of the John Doe defendants were adopted and carried out by the highest decision-making authorities in the KCKPD, said acts and omissions constituted the policy, custom, and practice of Defendant Unified Government.

64.  Alternatively, there exists within the Unified Government and the KCKPD employee hiring, training, supervision, and retention policies, procedures, practices that are so pervasive that they constitute the policy of the Unified Government and the KCKPD and were the moving force behind and thereby caused the constitutional deprivations suffered by Plaintiff as herein alleged; alternatively, there has been a failure to adopt employee hiring, training, supervision, and retention policies, practices, and procedures which would have prevented the constitutional deprivations suffered by Plaintiff as herein alleged.

65.  Defendants Unified Government, Armstrong, and various John Doe defendants are vested with the authority to establish employee hiring, training, supervision, and retention policies, procedures, practices, and usages of and for the KCKPD as are required for the lawful and effective administration of the Department and the protection of citizens and

fellow officers.  Defendants Unified Government, Armstrong, and various John Doe defendants have failed to establish and administer hiring, training, supervision, and retention policies, procedures, practices, and usages in a manner calculated to assure that KCKPD officers do not present a risk or unnecessarily increase the risk of constitutional violations of the rights of citizens or harm to fellow officers.

66.  Defendants Unified Government, Armstrong, and various John Doe defendants were aware of the hiring, training, supervision, and retention policies, procedures, practices and usages of the KCKPD and knew or should have known that the hiring, training, supervision, and retention policies, procedures, practices, and usages for the KCKPD, or the absence of same, presented a risk and/or unnecessarily increased the risk of constitutional violations of the rights of citizens and harm to fellow officers.

67.  Defendants Unified Government, Armstrong, and various John Doe defendants have the power and responsibility to prevent the existence of policies, procedures, practices, and usages which result in constitutional violations of the rights of citizens and, conversely, to establish policies, procedures, practices, and usages which prevent constitutional violations such as that suffered by Plaintiff.

68.  Defendant Armstrong and various John Doe defendants are in a position to establish informal policies, procedures, practices, and usages and to recommend to Defendant Unified Government formal policies, procedures, practices, and usages which prevent constitutional violations such as that suffered by Plaintiff.

69.  The failure of Defendants Unified Government, Armstrong, and various John Doe defendants to affirmatively act in the face of policies, procedures, practices, and usages

which resulted in constitutionally violative conduct establishes a policy to condone and otherwise tolerate constitutionally violative conduct in general and specifically, the constitutionally violative conduct alleged herein.  Had Defendants Unified Government, Armstrong and various John Doe defendants affirmatively acted to establish hiring, training, supervision, and retention policies, procedures, practices, or usages which were reasonably calculated to assure that officers were properly hired, trained, supervised, and retained or dismissed, the constitutional deprivation suffered by Plaintiff would not have occurred.

70.  In their failures as described, Defendants Unified Government, Armstrong, and various John Doe defendants intentionally disregarded known facts or, alternatively, were deliberately indifferent to a risk of constitutional violation of which they knew or should have known and their culpability caused the constitutional violations suffered by Plaintiff .

71.  As a direct and proximate result of the fact that the acts and omissions of the Defendant Commanders and some of the John Doe defendants were adopted and carried out by the highest decision making authorities in the KCKPD and due to the policies, procedures, practices, and usages of the KCKPD as established by Defendants Unified Government, Armstrong, and various John Doe defendants, or the absence of same, Plaintiff suffered damages as set forth in paragraph 45.

72.  Because the acts and omissions of the Defendant Commanders and some of the John Doe defendants were adopted and carried out by the highest decision making authorities in the KCKPD and constituted the policies, procedures, practices, and usages of the Unified Government, Armstrong, and various other John Doe defendants, and Defendants' promulgation or failure to promulgate, administration of or failure to administer hiring,

22

training, supervision, and retention policies, practices, and usages, all of which caused the constitutional deprivations suffered by Plaintiff, were willful, wanton, reckless, and malicious, and demonstrated a complete and deliberate indifference to, and conscious disregard for, the rights of Plaintiff, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants Armstrong and various John Doe defendants or to deter Defendants and others from like conduct in the future.

73.  Plaintiff is entitled to recover from the defendants reasonable attorneys' fees and expenses, as provided by 42 U.S.C. § 1988.

### COUNT IV
### FAILURE TO TRAIN/INADEQUATE TRAINING
### UNDER 42 U.S.C. § 1983
### (Against Defendants Unified Government, Armstrong, and
### Various Defendant Commanders and Doe Defendants)

74.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 73 of this Amended Complaint as if fully set forth here.

75.  Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants had the authority to train, supervise, discipline, and otherwise control the officers of the KCKPD, including the Defendant Commanders and some of the John Doe defendants.

76.  Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants had a duty to train police under their supervision, including the Defendant Commanders and some of the John Doe defendants.

77.  Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants had a duty to provide reasonable training to

prevent the police officers under their supervision from unlawfully arresting and detaining Plaintiff without probable cause.

78.  Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants failed to train the police officers under their supervision in a manner that reasonable governmental entities, police departments, and police chiefs and governmental officials would have under the circumstances.

79. The failure of Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants to provide reasonable and adequate training to prevent the police officers under their supervision from unlawfully arresting and detaining citizens without probable cause, amounts to a custom and demonstrated deliberate indifference to or tacit authorization of the acts and omissions of the Defendant Commanders and some of the John Doe defendants.

80.  The failure of Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants to adequately train KCKPD officers, and particularly the Defendant Commanders and some of the John Doe defendants, proximately caused injury to Plaintiff.

81.  Plaintiff has been damaged as a direct and proximate result of the defendants' actions as set forth in paragraph 45.

82.  Defendants' failure to exercise reasonable care in training the police officers under their supervision, including the Defendant Commanders and some of the John Doe defendants, was willful, wanton, reckless, and malicious, and further shows a complete and deliberate indifference to, and conscious disregard for, the rights of Plaintiff.  Therefore,

Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants Armstrong, certain other Defendant Commanders, and various John Doe defendants or to deter Defendants and others from like conduct in the future.

83.  Plaintiff is entitled to recover from the defendants reasonable attorneys' fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT V**
**FAILURE TO SUPERVISE/INADEQUATE SUPERVISION**
**UNDER 42 U.S.C. § 1983**
**(Against Unified Government, Armstrong, and**
**Various Defendant Commanders and Doe Defendants)**

84.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 83 of this Amended Complaint as if fully set forth here.

85.  Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants had the authority to train, supervise, discipline, and otherwise control the officers of the KCKPD, including the Defendant Commanders and some of the John Doe defendants.

86.  Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants had a duty to control, direct, and supervise the conduct of the Defendant Commanders and some of the John Doe defendants.

87.  Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants had a duty to exercise reasonable care to prevent the officers under their supervision from unlawfully arresting and detaining Plaintiff without probable cause.

88.  Defendants Unified Government, Armstrong, certain other Defendant

Commanders, and various Doe defendants failed to exercise the proper degree of control and supervision of the officers under their supervision that reasonable governmental entities, police departments, and police chiefs and governmental officials would have exercised under the circumstances.

89.  The failure of Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants to provide reasonable and adequate supervision to prevent the police officers under their supervision from unlawfully arresting and detaining citizens, amounts to a custom and demonstrated deliberate indifference to or tacit authorization of the acts and omissions of the Defendant Commanders and some of the John Doe defendants.

90.  The failure of Defendants Unified Government, Armstrong, certain other Defendant Commanders, and various Doe defendants to provide reasonable supervision of the Defendant Commanders and some of the John Doe defendants, proximately caused injury to Plaintiff.

91.  As a result of the failure of Defendants, Plaintiff suffered actual damages as set forth in paragraph 45.

92.  Defendants' failure to exercise reasonable care in supervising the police officers under their supervision, including the Defendant Commanders and some of the John Doe defendants was willful, wanton, reckless, and malicious, and further shows a complete and deliberate indifference to, and conscious disregard for, rights of Plaintiff.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages against Defendant Armstrong, certain other Defendant Commanders, and various Doe Defendants in an amount sufficient to

punish Defendants or to deter Defendants and others from like conduct in the future.

93.  Plaintiff is entitled to recover from the defendants reasonable attorneys' fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT VI**
**CONSPIRACY**
**UNDER 42 U.S.C. § 1983**
**(Against Unified Government, Defendant Commanders, and Various Doe Defendants)**

94.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 93 of this Amended Complaint as if fully set forth here.

95.  The Defendant Commanders, various Doe Defendants, and the Unified Government together, and under the color of state law, reached an understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to wrongfully arrest Plaintiff and to deprive Plaintiff of his constitutional rights, including his rights to be free from unreasonable seizure, arrest and detention and to due process of law and all basic rights of American citizens faced with criminal sanctions.  The conspiracies violated Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983.

96.  In furtherance of the conspiracy, as alleged, supra, the Defendant Commanders and one or more of the John Doe defendants wrongfully seized, arrested, and detained Plaintiff in the absence of reasonable suspicion to detain and/or probable cause to arrest and, further, deprived Plaintiff of due process.  Defendant Commanders and one or more of the John Doe defendants also assaulted, battered, and falsely imprisoned Plaintiff.

97.  The Defendants named in this Count VI, together with unsued co-conspirators, committed the overt acts set forth in the factual statements above.  The overt acts involved

the wrongful seizure, arrest, and detention of Plaintiff.  It also included denying Plaintiff of due process.  The conspiracy was designed to make a case against Plaintiff despite his innocence which was or should have been known to Defendants.

98.  The overt acts are violative of the constitutionally protected rights of Plaintiff.

99.  The conspiracies and overt acts proximately and directly caused Plaintiff to suffer constitutional deprivations, and grievous and permanent injury in that he was disarmed, detained, and unlawfully arrested at gun point by law enforcement officers whom he knew to have been trained never to point guns at persons without being prepared to use lethal force, causing him to experience fear and apprehension; he was assaulted and battered while being removed from the van and searched; he was unlawfully held for nearly twelve hours in insulting, humiliating, and embarrassing circumstances that included being escorted by an armed officer while using the restroom; he was subsequently assigned to administrative duties for approximately one month during which he was further humiliated and embarrassed; he suffered, continues to suffer, and will in the future suffer anxiety, psychological trauma, fear, mental pain and suffering, impacting his personal and professional life.  Further, as a result of the acts and omissions of each of the Defendants, all of which constituted the policy, custom, and practice of Defendant Unified Government, Plaintiff suffered damage to his reputation.  Plaintiff suffered and will continue to suffer lost promotional opportunities within the KCKPD, lost overtime opportunities, and/or lost wages from off-duty work he could not perform. For these damages and injuries, Plaintiff is entitled to monetary relief.

100.  Defendants' actions were deliberate, reckless, wanton, cruel, and were engaged

in with evil motive or reckless disregard for Plaintiff's rights, justifying an award of punitive damages.

101.  Plaintiff is entitled to recover from the defendants reasonable attorneys' fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT VII**
**ASSAULT**
**(Against Unified Government, Defendant Commanders, and Various Doe Defendants)**

102.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 101 of this Amended Complaint as if fully set forth here.

103.  The Defendant Commanders' actions, and the actions of one or more of the John Doe defendants in pointing their assault rifles at the Plaintiffs was intended to cause the Plaintiff to be in fear and apprehension of immediate bodily harm and did cause the Plaintiff to fear and be in apprehension of immediate bodily harm.

104.  Defendants' assaults on Plaintiff were committed in the scope and performance of their duties as employees of the KCKPD and the Unified Government.  As such, Defendant Unified Government is liable for such actions.

105.  Alternatively, Defendants' assaults on Plaintiff were authorized in advance and/or ratified after the fact by Defendant Unified Government, Defendant Armstrong and/or one or more of the Defendant Commanders and/or John Doe Defendants.  As such, the Unified Government is liable for such actions.

106.  Defendants' assaults on Plaintiff violate Plaintiff's rights under the Fourth Amendment to the United States Constitution.

107.  As a proximate cause of the acts and omissions of Defendants as set forth herein

above, Plaintiff was damaged as set forth in Paragraph 45 of this Amended Complaint.

108.   The acts of Defendants, as set forth in this Count VII, were willful, wanton, or done with malice or reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each defendant in an amount to be determined at trial.

**COUNT VIII**
**BATTERY**
**(Against Unified Government, Defendant Commanders, and Various Doe Defendants)**

109.   By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 108 of this Amended Complaint as if fully set forth here.

110.   After Plaintiff exited the van, a defendant or defendants, unknown to Plaintiff, required him to take off his body armor/bullet-proof vest, and conducted a pat-down search of Plaintiff, in so doing, intended to cause, and did cause harmful and/or offensive contact to Plaintiff.

111.   After Plaintiff exited the van, a defendant or defendants, unknown to Plaintiff, told him to turn away, put his hands up, and grabbed Plaintiff's hands, pulled them behind his back and pushed Plaintiff from behind, and, in so doing, intended to cause, and did cause harmful and/or offensive contact to Plaintiff.

112.   A defendant or defendants, unknown to Plaintiff, ripped from Plaintiff's neck the machine gun that had been strapped around it, and pulled Plaintiff's hand gun from its holster, and in so doing, intended to cause, and did cause harmful and/or offensive contact to Plaintiff.

113.   Defendant Lawson subjected Plaintiff to a strip-search during which his testicles

were lifted and/or manipulated, and, in so doing, intended to cause, and did cause harmful and/or offensive contact to Plaintiff.

114.  Later during the detention of Plaintiff, a defendant or defendants, unknown to Plaintiff, required Plaintiff to provide a DNA sample by swabbing his mouth, in so doing, intended to cause, and did cause harmful and/or offensive contact to Plaintiff.

115.  The batteries committed on Plaintiff, as alleged in this Count, were committed by said Defendants in the scope and performance of their duties as employees of the KCKPD and the Unified Government.  As such, the Unified Government is liable for such actions.

116.  The batteries committed on Plaintiff were authorized in advance and/or ratified after the fact by Defendant the Unified Government, Defendant Armstrong and/or one or more the Defendant Commanders and/or John Doe Defendants.   As such, the Unified Government is liable for such actions.

117.  The batteries described herein were conducted without legal privilege.

118.  The batteries described herein were conducted without the consent of Plaintiff or, in the alternative, with consent given under duress.

119.  The batteries described herein violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

120.  As a result of the acts and omissions of Defendants, as set forth in this Count, Plaintiff was damaged as alleged in Paragraph 45 of this Amended Complaint.

121.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice or reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

## COUNT IX
### FALSE ARREST AND IMPRISONMENT
**(Against Unified Government, Defendant Commanders, and Various Doe Defendants)**

122.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 121 of this Amended Complaint as if fully set forth here.

123.  The actions of each of the Defendant Commanders and one or more of the John Doe defendants, restrained the personal freedom of Plaintiff without legal cause.  Said Defendants falsely arrested and detained Plaintiff without a warrant, without probable cause, and in violation of K.S.A. § 22-2401.

124.  Plaintiff did not consent to his false arrest or false imprisonment.

125.  The actions of Defendants as described in paragraph 123 above violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

126.  The actions of Defendants in falsely arresting and falsely imprisoning Plaintiff were committed in the scope and performance of Defendants' duties as employees of the KCKPD and the Unified Government.  As such, the Unified Government is liable for such actions.

127.  The actions of Defendants in falsely arresting and falsely imprisoning Plaintiff were authorized in advance and/or ratified after the fact by the United Government, Defendant Armstrong and/or on or more of the Defendant Commanders and/or John Doe defendants.  As such, the Unified Government is liable for such actions.

128.  As a proximate cause of the acts and omissions of Defendants as set forth in this Count IX, Plaintiff was damaged as alleged in paragraph 45 of this Amended Complaint.

129.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done

with malice or reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined at trial.

**COUNT X**
**TORT OF OUTRAGE**
**(Against Unified Government, Defendant Commanders, and Various Doe Defendants)**

130.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 129 of this Amended Complaint as if fully set forth here.

131.  The conduct of each of the Defendant Commanders, and, upon information and belief, one or more of the John Doe defendants, was extreme, outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community.  Further Defendants acted intentionally or in reckless disregard of Plaintiff when engaging in such conduct.

132.  The outrageous conduct of each of the Defendant Commanders and one or more of the John Doe Defendants caused Plaintiff severe and extreme mental distress, beyond that which a reasonable person should be expected to endure.

133.  The outrageous conduct of each of the Defendant Commanders and one or more of the John Doe defendants was committed in the scope and performance of said Defendants' duties as employees of the KCKPD and the Unified Government.  As such, the Unified Government is liable for the actions of said Defendants.

134.  The outrageous conduct of each of the Defendant Commanders and one or more of the John Doe defendants was authorized in advance and/or ratified after the fact by the Unified Government, Defendant Armstrong, certain other Defendant Commanders, and/or various John Doe Defendants.  As such, the Unified Government is liable for such actions.

135.  As a proximate cause of the acts and omissions of Defendants as set forth in this

Count, the Plaintiffs were damaged as alleged in Paragraph 45 of this Amended Complaint.

136.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice or reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

## COUNT XI
### CIVIL CONSPIRACY
### (Against Unified Government, Defendant Commanders, and Various Doe Defendants)

137.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 136 of this Amended Complaint as if fully set forth here.

138.  Each of the Defendant Commanders and, upon information and belief, one of more of the John  Doe Defendants, consciously agreed and conspired with his fellow Defendants to wrongfully arrest Plaintiff and other members of the SCORE Team.

139.  In furtherance of said conspiracy, the Defendant Commanders and, upon information and belief, one or more of the John Doe defendants, assaulted, battered, falsely arrested and imprisoned Plaintiff, intentionally subjected Plaintiff to extreme emotional distress, and deprived Plaintiff of his constitutional rights.

140.  All actions taken by each of the Defendants Commanders and one or more of the John Doe defendants were ratified by his co-conspirators.

141.  As a proximate cause of the acts and omissions of Defendants as set forth in this Count, Plaintiff was damaged as alleged in Paragraph 45 of this Amended Complaint.

142.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice or reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

## COUNT XII
### AIDING AND ABETTING
### (Against Unified Government, Defendant Commanders, and Various Doe Defendants)

143.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 142 of this Amended Complaint as if fully set forth here.

144.  Each of the Defendant Commanders and, upon information and belief, various of the John Doe defendants, assaulted, battered, falsely arrested, and imprisoned Plaintiff, intentionally subjected Plaintiff to extreme emotional distress, and deprived Plaintiff of his constitutional rights as described in the preceding paragraphs.

145.  Each of the Defendant Commanders and, upon information and belief, various of the John Doe defendants, with knowledge that his fellow defendants were engaging in the tortious and unlawful acts described in paragraph 144, above, knowingly and substantially assisted his fellow defendants in carrying out such acts by, among other things, planning the arrest, participating in the arrest, holding Plaintiff under armed guard, detaining Plaintiff against his will, ordering the unlawful conduct, and/or failing to intervene to prevent and/or stop the unlawful activity.

146.  As a proximate cause of the acts and omissions of Defendants as set forth in this Count, Plaintiff was damaged as alleged in Paragraph 45 of this Amended Complaint.

147.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice or reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

## COUNT XIII
### NEGLIGENT FAILURE TO TRAIN/INADEQUATE TRAINING
### (Against Unified Government, Armstrong, and
### Various Defendant Commanders and Doe Defendants)

148.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 147 of this Amended Complaint as if fully set forth here.

149.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants had the authority to train the officers of the KCKPD, including subordinate Defendant Commanders, and some of the John Doe defendants.

150.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants had a duty to train the officers of the KCKPD under their supervision, including subordinate Defendant Commanders, and some of the John Doe defendants.

151.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants had a duty to provide reasonable training to prevent the police officers under their supervision from unlawfully arresting and detaining citizens, including Plaintiff, without probable cause, from assaulting and battering citizens, including Plaintiff, and from engaging in outrageous conduct when planning and effecting arrests.

152.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants failed to train the police officers under their supervision in a manner that reasonable governmental entities, police departments, police chiefs, and government officials would have under the circumstances.

36

153.  The failure of Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants to provide reasonable and adequate training to prevent the police officers under their supervision from unlawfully arresting and detaining citizens, including Plaintiff, from assaulting, battering and subjecting citizens, including Plaintiff, to outrageous conduct during arrests and detention, amounts to a custom and demonstrated deliberate indifference to or tacit authorization of the acts and omissions of the Defendant Commanders and some of the John Doe defendants.

154.  The failure of Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe Defendants to provide adequate training to their subordinate Defendant Commanders and some of the John Doe defendants, proximately caused injury to Plaintiff.

155.  As a proximate cause of the acts and omissions of Defendants as set forth in this Count, Plaintiff was damaged as alleged in Paragraph 45 of this Amended Complaint.

156.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice and reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

### COUNT XIV
### NEGLIGENT SUPERVISION
### (Against Unified Government, Armstrong, and
### Various Defendant Commanders and Doe Defendants)

157.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 156 of this Amended Complaint as if fully set forth here.

158.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants had the authority and responsibility to

supervise, discipline, direct, and otherwise control and direct the officers of the KCKPD, including subordinate Defendant Commanders, and some of the John Doe defendants.

159.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants had a duty to supervise, discipline, direct, and otherwise control the conduct of officers of the KCKPD, including subordinate Defendant Commanders, and some of the John Doe defendants.

160.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants had a duty to exercise reasonable care to prevent the officers under their supervision from unlawfully arresting and detaining citizens, including Plaintiff, without probable cause, and from assaulting, battering, and subjecting citizens, including Plaintiff, to outrageous conduct when planning and effecting arrests.

161.  Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants failed to exercise the proper degree of control and supervision of the officers under their supervision that reasonable governmental entities, police departments, police chiefs, and governmental officials would have exercised under the circumstances.

162.  The failure of Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants to provide reasonable and adequate supervision to prevent the police officers under their supervision from unlawfully arresting and detaining citizens, including Plaintiff, from assaulting, battering and subjecting citizens, including Plaintiff, to outrageous conduct during their arrests and detention, amounts to a custom and demonstrated deliberate indifference to or tacit authorization of the

acts and omissions of the Defendant Commanders and some of the John Doe defendants.

163.  The failure of Defendant Unified Government, Defendant Armstrong, certain other Defendant Commanders, and various John Doe defendants to provide reasonable supervision of their subordinate Defendant Commanders and some of the John Doe defendants, proximately caused injury to Plaintiff.

164.  As a proximate cause of the acts and omissions of the Defendants as set forth in this Count, Plaintiffs was damaged as alleged in Paragraph 45 of this Amended Complaint.

165.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice and reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

### COUNT XV
### INVASION OF PRIVACY - FALSE LIGHT
### (Against Unified Government, Armstrong, and
### Various Defendant Commanders and Doe Defendants)

166.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 165 of this Amended Complaint as if fully set forth here.

167.  Upon information and belief, on or about January 4, 2011, the Unified Government, at the direction of or with the knowledge and approval of Defendant Armstrong, one or more of the Defendant Commanders, and/or one or more of the John Doe defendants, informed the press of the sting operation and/or the arrests of the SCORE team including Plaintiff.

168.  Upon information and belief, based upon information provided by the Unified Government, at the direction of or with the knowledge and approval of Defendant Armstrong, one or more of the Defendant Commanders, and/or one or more of the John Doe

defendants, the press ascertained that Plaintiff was among those members of the SCORE team who had been arrested.

169.  By arresting Plaintiff without probable cause and detaining him for more than twelve hours, Defendants represented Plaintiff in a false light as a criminal and/or a corrupt police officer.

170.  By notifying the press and public that the SCORE team had been arrested, when the arrests of Plaintiff was without probable cause, the Unified Government, Defendant Armstrong, and/or one or more of the Defendant Commanders or John Doe defendants falsely represented to the public that Plaintiff was a criminal and/or a corrupt police officer.

171.  By placing Plaintiff on administrative leave immediately following his false arrest and leaving him on administrative leave for approximately a month, the Unified Government, Defendant Armstrong, one of more of the Defendant Commanders, and/or John Doe defendants falsely represented to the public that Plaintiff was a criminal and/or a corrupt police officer.

172.  Being falsely represented to be a criminal and/or a corrupt police officer is highly offensive to Plaintiff and has caused him mental and emotional distress.

173.  Being falsely represented to be a criminal and/or a corrupt police officer would be highly offensive to a reasonable person.

174.  Plaintiff did not consent to having his arrests publicized or to being falsely represented to the public as a criminal and/or a corrupt police officer.

175.  The portrayal of Plaintiff in a false light was done in the scope and performance of various of the defendants' duties as employees of the Unified Government.  As such,

Defendant Unified Government is liable for such actions.

176.  The portrayal of Plaintiff in a false light was authorized in advance and/or ratified after the fact by the Unified Government, Defendant Armstrong, and/or one or more the John Doe defendants.  As such, the Unified Government is liable for such actions.

177.  As a proximate cause of the acts and omissions of Defendants as set forth in this Count, Plaintiff was damaged as alleged in Paragraph 45 of this Amended Complaint.

178.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice or reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

COUNT **XVI**

DEFAMATION

**(Against Unified Government, Armstrong, and
Various Defendant Commanders and Doe Defendants)**

179.  By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 178 of this Amended Complaint as if fully set forth here.

180.  Upon information and belief, on or about January 4, 2011, the Unified Government, at the direction of or with the knowledge and approval of Defendant Armstrong, one or more of the Defendant Commanders, and/or one or more of the John Doe defendants, informed the press of the sting operation and/or the arrests of the SCORE team including Plaintiff.

181.  Upon information and belief, based upon information provided by the Unified Government, at the direction of or with the knowledge and approval of Defendant Armstrong, one or more of the Defendant Commanders, and/or one or more of the John Doe defendants, the press ascertained that Plaintiff was among those members of the SCORE

41

team who had been arrested.

182.  By arresting Plaintiff without probable cause and detaining him for more than twelve hours, the Defendants falsely communicated to the public that Plaintiff is a criminal and/or a corrupt police officer.

183.  By notifying the press and public that Plaintiff had been arrested, when the arrests were without probable cause, the Unified Government, Defendant Armstrong, and/or one or more of the Defendant Commanders, and/or John Doe defendants falsely communicated to the public that Plaintiff was a criminal and/or a corrupt police officer.

184.  By placing Plaintiff on administrative leave immediately following his false arrest and leaving him on administrative leave for approximately a month, the Unified Government, Defendant Armstrong, and/or one of more of the Defendant Commanders, and/or John Doe defendants falsely communicated to the public that Plaintiff was a criminal and/or a corrupt police officer.

185.  On or about January 5, 2011, Defendant Armstrong held a press conference in which he falsely communicated to third parties that Plaintiff was a criminal and/or a corrupt police officer.

186.  Since January 5, 2011, in roll calls, at the police training academy, and, upon information and belief, in other public settings, Defendant Armstrong has falsely communicated to third parties that Plaintiff is a criminal and/or a corrupt police officer.

187.  As a proximate cause of the defamatory communications and conduct of Defendant Armstrong, and/or one or more of the Defendant Commanders, and/or John Doe defendants, Plaintiff has suffered damage to his reputation.

188.  Plaintiff did not consent to the defamatory communications made about him.

189.  Plaintiff is neither a criminal nor a corrupt police officer.  There was never probable cause to arrest him and he has never been charged with a crime in relation to the sting operation at the Everett Avenue residence.

190.  The false communications regarding Plaintiff was made with actual malice and reckless disregard for the truth.

191.  The defamation of Plaintiff was conducted in the scope and performance of various of the Defendants' duties as employees of the KCKPD and the Unified Government. As such, Defendant Unified Government is liable for such actions.

192.  The defamation of Plaintiff was authorized in advance and/or ratified after the fact by the Unified Government, Defendant Armstrong, and/or one or more of the Defendant Commanders, and/or John Doe defendants.  As such, Defendant Unified Government is liable for such defamation.

193.  As a proximate cause of the acts and omissions of Defendants as set forth in this Count, Plaintiff was damaged as alleged in Paragraph 45 of this Amended Complaint.

194.  The acts of Defendants, as set forth in this Count, were willful, wanton, or done with malice and reckless disregard for Plaintiff's rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court, after a trial by jury of his claims, enter judgment against Defendants for his actual damages, nominal damages, and punitive or exemplary damages as are proven at trial, for his attorney fees and expenses pursuant to 42

U.S.C. § 1988, for costs herein, and for any such further legal and equitable relief as the

Court deems appropriate.

Respectfully submitted,

ARTHUR BENSON & ASSOCIATES


By  s/ Arthur A. Benson II
Arthur A. Benson II  D.Kan. # 70134
Jamie Kathryn Lansford D.Kan #70220
4006 Central Avenue (Courier Zip: 64111)
P.O. Box 119007
Kansas City, Missouri 64171-9007
(816) 531-6565
(816) 531-6688 (telefacsimile)
abenson@bensonlaw.com
jlansford@bensonlaw.com

Attorneys for Plaintiff