# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PATRICK CALLAHAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 11-2621-KHV ) (Lead Case)[1] |
| THE UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY KANSAS, et al., | ) ) ) ) |
| Defendants, | ) ) ) |

## MEMORANDUM AND ORDER

This matter is before the court on defendants' motions to compel. (Doc. 192, 193, & 204). The rulings are set forth below.

## Background

The genesis of this lawsuit is the arrest and detention of certain police officers employed by the Kansas City, Kansas Police Department ("KCKPD"). Highly summarized, on January 4, 2011, Officer Callahan was part of a ten-person SCORE team assigned to

---

[1] Case Nos. 11-2699, 12-2010, and 12-2028 are consolidated with this case for purposes of discovery and all discovery related motions and orders are filed in 11-2621.

search a residence located in Kansas City, Kansas.[2] The search was part of a sting operation to determine whether any members of the SCORE team would steal items that had been planted in the residence. All ten members of the team entered the residence to clear it of occupants and, within minutes, it was determined that no one was in the residence. Callahan then stepped outside the house and took an assigned position covering the front entrance for the remainder of the search. Callahan alleges that defendants and/or the FBI conducted video surveillance of the residence and were aware that he had not taken anything from the house during the operation.

Following the search, Callahan and the other team members were ordered to board their tactical van and told that they were going to another location to conduct a second search. When team members got in the van they discovered that Sergeant Cross was in the driver's seat and Sergeant Sims was in the passenger seat.[3] Instead of proceeding to the second search location, Cross drove the van to the police headquarters parking garage where the SCORE team members were arrested at gunpoint, searched, and detained. Callahan alleges that nothing illegal, improper, stolen, or in violation of KCKPD was found on him or under his control and that the arrest was without probable cause. He also alleges that the illegal arrest and detention continued until he was released at 2:00 a.m. on January 5, 2011. Officer Callahan and the consolidated plaintiffs assert various federal civil rights violations

---

[2] SCORE is the tactical component of the Kansas City, Kansas police department, commonly referred to as a SWAT team by other law enforcement organizations.

[3] Neither Sims nor Cross were members of the SCORE team.

-2-

and state law claims related to the sting operation and their unlawful arrest.

## **Defendants' Motion to Compel (Doc. 192)**

Defendants move to compel plaintiffs Gambrill, Gardner, Hoang, and Mills to provided more complete answers to approximately 40 interrogatories.[4] Plaintiffs oppose the motion, arguing that their objections are proper and that they have otherwise sufficiently answered the interrogatories. For the reasons set forth below, defendants' motion to compel (Doc. 192) shall be DENIED.

Defendants argue that their discovery requests are relevant because: "[r]elevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the *subject matter of the action.*" Citing Smith v. MCI Telecommunications Corp., 137 F.R.D. 25, 27 (D. Kan. 1991)(emphasis added). Smith accurately stated the standard for "relevance" under the federal rules of civil procedure in 1991; however, the *scope* of discovery under FRCP 26(b)(1) was substantially amended in 2000 and is limited to the parties' "claims and defenses." Defendants' reliance on a discovery standard and related case law that was abrogated 13 years ago by amendments to the federal rules of civil

---

[4] Defendants are *all* represented by the same attorneys. Plaintiffs Gambrill, Gardner, Hoang, and Mills are represented by the firm of Steve A. J. Bukaty. Defendants' second motion to compel (Doc. 193) concerns discovery requests to plaintiff Pittman who is represented by Brian McCallister. Defendants' third motion to compel (Doc. 204) involves discovery requests to plaintiff Callahan who is represented by Arthur Benson & Associates.

procedure is misguided and improper.

Defendants also cite two cases from the early 70's and one case from 1985 concerning FRCP 33(c) and the identification of documents when answering an interrogatory. Again, FRCP 33 has been amended and the current version of FRCP 33(c) does not address the identification of documents when answering an interrogatory.[5]

More importantly, defendants' motion to compel is woefully inadequate. Stripped of prolixity, the discovery motion before the court concerns the sufficiency of plaintiffs' answers to a number of interrogatories. Defendants contend that plaintiffs should provide more information in their answers and plaintiffs assert that they have sufficiently answered the interrogatories. When presented with such an issue, the court begins its analysis with a review of the information requested in an interrogatory by the movant and the answer provided by the respondent.

The problem in this instance is that defendants seek to compel answers to *multiple* interrogatories served by *different defendants* on *different plaintiffs* and then directs the court to two exhibits containing over 600 pages of interrogatories and answers. The following excerpt from defendants' brief illustrates the confusing structure of defendants' motion:

---

[5] FRCP 33(d) discusses a respondent's *option* to produce business records as an alternative method for answering an interrogatory. There is no indication that plaintiffs were attempting to answer the interrogatories by producing business records and Rule 33(d) has no apparent application to this discovery dispute.

- 4 -

> **Defendants Brown and Nicholson's Interrogatory Nos. 1, 5, 6, 8, 9, 10, 11 (all Plaintiffs); Lawson's Interrogatory Nos. 1, 5, 9, 10, 11 (all Plaintiffs), No. 6 and 8 (Plaintiffs Gardner, Hoang and Mills only); Steele's Interrogatory Nos. 1, 5, 6, 8, 10 and 11 (all Plaintiffs) and No. 9 (Plaintiffs Gambrill and Mills only); York and Ziegler's Interrogatory Nos. 1, 5, 6, 8, 9, 10, 11 (all Plaintiffs) and No. 7 (Plaintiff Mills only); Unified Government Nos. 7-13 and 20 and Armstrong's Interrogatory Nos. 1, 7, 9-13**
>
> Plaintiffs supplemented their answers to Defendants Brown and Nicholson's Interrogatory Nos. 1, 5, 6, 8, 9, 10, 11; Lawson's Interrogatory Nos. 1, 5, 9, 10, 11, (all Plaintiffs) and Nos. 6 and 8 (Plaintiffs' Gardner, Hoang and Mills only); Steele's Interrogatory Nos. 1, 5, 6, 8, 10 and 11 (all Plaintiffs) and No. 9 (Plaintiffs Gambrill and Mills); York and Ziegler's Interrogatory Nos. 1, 5, 6, 8, 9, 10, 11 (all Plaintiffs') and No. 7 (Plaintiff Mills only); Unified Government Nos. 7-13 and 20; and Armstrong's Interrogatory Nos. 1, 7, 9-13, subject to their blanket objections previously raised in their original answers objecting on the basis that these interrogatories were "overly broad and unduly burdensome" as Plaintiffs claimed it required them to "summarize in narrative form information contained in twenty depositions taken in this case and information from more than 30,000 documents produced by Defendants." Exhibit 5 and 6. Plaintiffs supplemented their answers to these interrogatories "[w]ithout waiving this objection." Exhibit 6.

<u>Defendants' Motion</u>, Doc. 192, p. 7 (emphasis in original). Defendants followed this recitation of interrogatories with a single paragraph of five sentences asserting that plaintiffs' objections were not properly supported and that the court should compel additional responses without objection.[6] Plaintiffs counter with similar conclusory arguments that the interrogatories were overly broad on their face and that plaintiffs' objections are valid. Defendants filed no reply brief challenging any of plaintiffs' arguments or assertions.

---

[6] Oddly, the list of the disputed interrogatories takes up more space than plaintiff's conclusory arguments for more detailed answers.

-5-

Exhibits 5 and 6 contain 627 pages of interrogatories and answers. There is no apparent system of organization for this lengthy collection of interrogatories and answers and the court declines to sort through Exhibits 5 and 6 to evaluate the sufficiency of plaintiffs' interrogatory answers. In essence, defendants assert conclusory arguments and then refer the court to a large collection of unorganized discovery requests and responses.[7] Given defendants' reliance on outdated discovery rules and conclusory arguments, defendants' motion (Doc. 192) to compel more complete answers to defendants' interrogatories shall be DENIED.

### Defendants' Motion to Compel (Doc. 193)

Defendants' second motion to compel seeks more complete answers to various interrogatories served on plaintiff Jason Pittman by defendants Armstrong, Lawson, Nicholson, Steele and York. Defendants' second motion contains the same legal errors and conclusory arguments concerning the federal rules of civil procedure discussed above and and then refers the court to 122 pages of interrogatories and answers. Pittman counters that he has sufficiently answered the interrogatories, citing the current version of the federal rules of civil procedure. Defendants filed no reply challenging Pittman's arguments and

---

[7] The court notes the irony of defendants' motion and conclusory arguments. As best as the court can discern, the central theme of defendants' motion is that plaintiffs' interrogatory answers are conclusory and fail to identify documents and deposition testimony with sufficient detail. Plaintiffs dispute defendants' characterization of their answers.

explanation of his discovery responses. Under the circumstances, defendants' second motion to compel (Doc. 193) shall be DENIED.

## Defendants' Motion to Compel (Doc. 204)

Defendants' third motion seeks to compel plaintiff Callahan to provided more detailed interrogatory answers. Defendants' initial motion and supporting arguments suffer from the same defects discussed above and Callahan argues that he has sufficiently answered the interrogatories. However, in this instance, defendants did file a reply brief.

Defendants' motion seeks to compel Callahan to identify every Bates-stamped document and all deposition testimony with exacting specificity that support Callahan's various claims for relief. The court declines to enter such an exacting order in this case. To date, over 30 depositions have been taken in this case. Requiring Callahan to cite every line of a deposition transcript that supports his various claims would be unduly burdensome. In addition, more than 37,000 documents have been produced *by defendants.* At this stage of discovery, the court will not require plaintiffs to identify by Bates-stamped number the documents that were produced by defendants. Accordingly, the motion to compel Callahan to provide more complete interrogatory answers shall be DENIED.

**IT IS THEREFORE ORDERED** that defendants' motions to compel (Doc. 192, 193 & 204) are **DENIED.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 29th day of April 2013.

                                               S/Karen M. Humphreys
                                               KAREN M. HUMPHREYS
                                               United States Magistrate Judge