# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PATRICK CALLAHAN,       )
      )
      **Plaintiff,**      )
      )
**v.**      )      **Case No. 11-2621-KHV**
      )      **(Lead Case)[1]**
**THE UNIFIED GOVERNMENT OF**      )
**WYANDOTTE COUNTY/KANSAS**      )
**CITY KANSAS, et al.,**      )
      )
      **Defendants,**      )
      )
      )

## MEMORANDUM AND ORDER

Plaintiffs served a subpoena duces tecum seeking testimony and documents related to a sting operation by the Kansas City, Kansas Police Department (KCKPD) on Jerome Gorman, the Wyandotte County District Attorney.[2] This matter is before the court on the United States' and Gorman's respective motions to quash and/or for a protective order. (Docs. 205 & 212) For the reasons set forth below, the United States' motion shall be **GRANTED** and Jerome Gorman's motion shall be **GRANTED IN PART.**

---

[1]

    Case Nos. 11-2699, 12-2010, and 12-2028 are consolidated with this case for purposes of discovery and all discovery related motions and orders are filed in 11-2621.

[2]

    Mr. Gorman is not a party to this litigation.

## Background

Highly summarized, plaintiffs allege various civil rights and state law violations related to their arrest and detention following an internal sting operation by the KCKPD. The sting was called "Operation Sticky Fingers" and was designed to catch members of a tactical police team in the act of stealing property while executing a search warrant on a residence.[3] Plaintiffs contend that they did not steal any property or engage in any illegal conduct and that their arrests were without probable cause.

## The United States' Motion (Doc. 205)

Prior to the sting operation, the U.S. Attorney's Office for the District of Kansas and the FBI shared certain documents and verbal information with the Wyandotte County District Attorney concerning a federal criminal investigation of corruption in the KCKPD. Plaintiffs served a subpoena duces tecum on Mr. Gorman which included a request for all records of communication between Gorman and any member of the KCKPD, *the U.S. Attorney's Office, or the FBI* regarding (1) the planning of Operation Sticky Fingers and (2) any allegations of wrongdoing by plaintiffs. The United States moves to quash the subpoena or for a protective order, asserting privilege and public policy reasons for prohibiting discovery of the information provided to Mr. Gorman by the U.S. Attorney's Office or the FBI.

Plaintiffs now concede that the documents and information provided by the U.S.

---

[3]

The details of the police sting operation were described in an earlier opinion and will not be repeated. (Memorandum and Order, Doc. 248).

Attorney's Office and the FBI to Mr. Gorman are protected from discovery and, with one

exception, "abandon" their request for such documents and communications. (Plaintiffs'

Response, Doc. 219, pp.1-2). The exception concerns 31 FBI documents which were part

of KCKPD's internal files. Plaintiffs allege that those documents were produced by

defendants early in this case and have been used during the 34 depositions taken in this case.[4]

With the exception of the FBI documents (Bates numbered UG000199-UB000230), the

United States' motion shall be granted.[5]

**IT IS THEREFORE ORDERED** that the United States' motion **(Doc. 205)** is

**GRANTED.** The subpoena is quashed "to the extent that it requests disclosure of

information (either verbal or documentary) received from an agency or agent of the United

States." Mr. Gorman is prohibited from disclosing information (verbal or documentary)

received from an agency or agent of the United States.

**Jerome Gorman's Motion (Doc. 212)**

The same subpoena requests both deposition testimony and 13 categories of

---

[4]

The United States filed no reply brief concerning the FBI documents that
apparently have been used repeatedly during the parties' depositions.

[5]

Plaintiffs' separate request that Mr. Gorman provide a detailed privilege log
concerning information provided by the United States is denied.

documents from the Wyandotte County District Attorney related to Operation Sticky Fingers. The documents requested include Mr. Gorman's communications with the KCKPD concerning (1) the planning of the operation, (2) officer misconduct, (3) probable cause, (4) criminal referrals, and (5) Giglio/Brady issues.[6] Mr. Gorman asserts numerous objections to the subpoena which are discussed in greater detail below.[7]

**Immunity**

Mr. Gorman argues that he enjoys absolute immunity as a prosecutor "in initiating a prosecution and in presenting the State's case" and that this immunity shields him from "participating in litigation and making decisions as to how it should proceed." Imbler v. Pachtman, 424 U.S. 409, 424 (1976); Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009). Gorman contends that Imbler's protection from the burdens of litigation extend to his status as a ***non-party witness***. Chang v. U.S., 246 F.R.D. 372 (D.D.C. 2007). However, plaintiffs counter that the policy considerations underpinning absolute prosecutorial immunity are not applicable when a prosecutor gives advice to a police officer during the investigatory phase of a criminal case. Gorman asserts that even if certain aspects of his conduct are only entitled to qualified immunity he is still immune from discovery.

---

[6] "Giglio/Brady" is a shorthand reference to Giglio v. United States, 405 U.S. 150 (1972) and/or Brady v. Maryland, 373 U.S. 83 (1963).

[7] The objections are addressed in the order presented by Mr. Gorman. As reflected in this opinion, more than one objection is valid.

Gorman's contention that a ***non-party witness*** is immune from discovery because of qualified immunity is not persuasive. Gorman relies on Ashcroft v. Iqbal, which discusses a public official's claim of qualified immunity and the "burdens of litigation" in the context of the official's status as a ***party.*** It does <u>not</u> address the situation where the public official is merely a fact witness in the case. Moreover, there is no question that a non-party who is immune ***from suit*** can be compelled to provide discovery. For example, states are immune from suits by citizens in federal court under the Eleventh Amendment, yet federal courts regularly order state agencies to produce relevant documents in cases where the state is not a party. Similarly, a police officer may be entitled to qualified immunity but still be a fact witness and subject to a deposition subpoena concerning the acts of other police officers. Gorman's contention that a non-party witness is immune from discovery merely because the witness is entitled to qualified immunity from suit is rejected.

With respect to absolute immunity, research reveals only two reported cases holding that a ***non-party witness*** who has ***absolute immunity*** from liability as a prosecutor is immune from discovery. In Chang v. U.S., 246 F.R.D. 372 (D.D.C. 2007), Judge Emmet G. Sullivan denied plaintiffs' Rule 30(b)(6) subpoena request for information from the Washington, D.C. prosecutor's office concerning: (1) the prosecutor's decision whether to prosecute protestors arrested in a park and (2) the creation of "notices of infraction" for the arrested persons. Judge Sullivan concluded that the reasons for prosecutorial immunity expressed in Imbler v. Pachtman similarly applied to certain discovery requests even though the prosecutor was

not a party to the lawsuit.[8]  In a case from the District of Arizona, Judge James A. Teilborg

cited Chang as an alternative reason for granting a prosecutor's motion for a protective order.

Dowling v. Arpaio, 2011 WL 1456732 (D. Arizona, April 15, 2011).[9]

Chang recognized a new evidentiary privilege (absolute immunity) which, to date,

has been cited by only one other trial court.  However, this court concludes that it is

unnecessary to recognize this new privilege because the federal rules of civil procedure and

relevant Tenth Circuit case law provide ample guidance for addressing discovery requests

served on a prosecutor.  For example, a party seeking to discover factual information from

a non-party prosecutor must establish the relevance of the requested information under Fed

R. Civ. P. 26 and, as a general rule, must show a compelling need to do so and that the

information is not available  from another source.  See, e.g., Boyd v. Ward, 179 F.3d 904,

920-21 (10th Cir. 1999).  The Tenth Circuit also recognizes:  (1) the work product doctrine,

(2) the deliberative process privilege, (3) a law enforcement evidentiary privilege, and (4)

a consultative privilege.  See US v. Winner, 641 F.2d 825 (10th Cir. 1981).  Based on the

relevant rules of civil procedure and Tenth Circuit precedent, this court finds it unnecessary

to recognize "absolute immunity" as a new evidentiary privilege.

---

[8]

The Supreme Court concluded in Imbler that "harrassment by unfounded litigation
would cause a deflection of the prosecutor's energies from his public duties, and the
possibility that he would shade his decisions instead of exercising the independence of
judgment required by his public trust."  424 U.S. at 423.

[9]

Before considering the issue of prosecutorial immunity, Judge Teilborg concluded
that a protective order was warranted in the Arizona case because of the prosecutor's
"deliberative process and mental impression" privileges.

**Relevance**

Gorman argues that discovery requests for information concerning his probable cause analysis are not relevant to the claims in this case. With one narrow exception, the court agrees that Gorman's legal opinions concerning the existence of probable cause and prosecution decisions are irrelevant. The narrow exception is whether Gorman advised the police department *during* the sting operation that the police had probable cause to arrest the plaintiffs. Such information is highly relevant to plaintiffs' claims that the police arrested them on January 4, 2011 without probable cause and may be discovered unless otherwise protected by another privilege.[10]

**Work Product Doctrine and Deliberative Process Privilege**

Gorman also objects that the work product doctrine and deliberative process privilege protect the mental processes of the prosecutor and he should not be compelled to disclose his thought process concerning probable cause and the decision whether or not to prosecute the plaintiffs or any other persons. Mr. Gorman notes that the statute of limitations has not run on the January 4, 2011 sting operation and that disclosure of his thought process could be harmful to future criminal prosecutions. The court agrees that the work product doctrine and deliberative process privilege both protect Mr. Gorman's mental processes concerning his

---

[10]

To be clear, Gorman's thought process is not discoverable. Only the fact that Gorman advised the police whether probable cause existed to arrest the plaintiffs is discoverable.

decisions whether or not to prosecute the plaintiffs or other persons from discovery. This includes Mr. Gorman's analysis of weaknesses in potential criminal cases because of the requirements of Giglio/Brady.

**Overly Broad and Irrelevant**

Plaintiffs' subpoena requests production of any documents from the prosecutor's office that are potentially subject to disclosure under Giglio or Brady. Gorman asserts that the request is overly broad because the request is not limited to KCKPD officers connected to this case. Plaintiffs do not address this argument and the court finds that plaintiffs' request for *any* Giglio or Brady material associated with KCKPD officers is overly broad and should be denied.

Plaintiffs assert in conclusory fashion that: (1) they are only seeking documents and that Gorman should indicate whether or not the documents exist; (2) "plaintiffs need them to verify or discredit what defendants say about plaintiffs;" and (3) Gorman produced a Brady list in another case. Plaintiffs' vague, conclusory statements are not adequately explained or discussed and are rejected.

Plaintiff Gardner filed a separate response arguing that defendant Armstrong testified that he has not allowed Gardner to return to work, in part, because of letters written by Gorman that the Wyandotte County District Attorney would not file any criminal case in which Gardner was the sole or primary witness because Mr. Gardner "has Brady/Giglio issues." Plaintiffs have the letters in their possession and the information concerning the

letters is readily available from both defendants Armstrong and Lawson. Gardner has not

shown good cause for questioning Gorman concerning prosecution decisions. Moreover,

Gardner has not shown that the same information cannot be secured from other sources such

as Armstrong and Lawson.


**Law Enforcement Privilege and Consultative Privilege**

Mr. Gorman also objects that communications between prosecutors and police officers

"are held to be privileged within the context of a criminal case." Although not expressly

labeled as such, the objection appears to be related to what the Tenth Circuit refers to as a

law enforcement privilege and/or a consultative privilege. United States v. Winner, 641 F.2d

825, 831-32 (10ᵗʰ Cir. 1981). To assert the law enforcement or consultative privilege

> the responsible individual in the department must lodge a formal claim
> of privilege, after actual personal consideration, **specifying with
> particularity** the information for which protection is sought and **explain**
> why the information falls within the scope of the privilege.

Winner at 831-832 (emphasis added). General allegations that information is protected from

disclosure are not sufficient and, at a minimum, Mr. Gorman must provide a privilege log to

assert a law enforcement or consultative privilege. Mr. Gorman's motion does not contain

the information required for the assertion of either privilege. However, he may provide a

privilege log containing the information required by Winner before his deposition.


**IT IS THEREFORE ORDERED** that Mr. Gorman's motion to quash or for a

protective order **(Doc. 212)** is **GRANTED IN PART** and **DENIED IN PART**, consistent

with the rulings herein.  Mr. Gardner's motion to file documents under seal **(Doc. 222)** is

**GRANTED.**

    **IT IS SO ORDERED.**

    Dated at Wichita, Kansas this 16th day of May 2013.


                S/ Karen M. Humphreys
                KAREN M. HUMPHREYS
                United States Magistrate Judge