# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PATRICK CALLAHAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNIFIED GOVERNMENT OF ) <br> WYANDOTTE COUNTY/KANSAS ) <br> CITY KANSAS, et al., ) <br> ) <br> Defendants, ) <br> ) | Case No. 11-2621-KHV <br> (Lead Case)[1] |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' motion to compel defendants to fully respond to plaintiffs' production requests. (Doc. 253). For the reasons set forth below, the motion shall be DENIED.

### Background

The basis of this lawsuit is the arrest and detention of certain police officers employed by the Kansas City, Kansas Police Department ("KCKPD"). Highly summarized, plaintiffs allege various civil rights and state law violations related to their arrest and detention following an internal sting operation by the KCKPD. The sting was called "Operation Sticky Fingers" and was designed to catch members of a tactical police

---

[1] Case Nos. 11-2699, 12-2010, and 12-2028 are consolidated with this case for purposes of

team in the act of stealing property while executing a search warrant on a residence.[2] Plaintiffs contend that they did not steal any property or engage in any illegal conduct and that their arrests were without probable cause. Plaintiffs claim defamation and invasion of privacy by placing them in a false light, and allege they suffered extreme emotional distress and psychological trauma from their arrests. Plaintiffs also contend that they have lost promotional opportunities and the wages and benefits corresponding with those promotions.

**Plaintiffs' Motion to Compel (Doc. 253)**

The consolidated plaintiffs move to compel responses to Request Nos. 2-5 and 18 of plaintiffs' third requests for production of documents.[3] On March 1, 2013, plaintiffs served the requests on defendants. Defendants timely served their responses and objections. Counsel exchanged "golden rule" correspondence, and the motion to compel was timely filed.[4]

Plaintiffs request an order compelling production of three general categories of

---

discovery. All discovery related motions and orders are filed in 11-2621.
[2] The details of the police sting operation were described in an earlier opinion and will not be repeated. (Memorandum and Order, Doc. 248.)
[3] In plaintiffs' initial motion, they also asked to compel responses to Requests Nos. 11-13. In defendants' response, they assert that the issues regarding those requests have been resolved between the parties. (Doc. 265.) Plaintiffs agreed in their reply that the issues surrounding those requests have been resolved.
[4] See letters exchanged between counsel attached as Exhibits F through H to plaintiffs' memorandum. (Doc. 254.)

2

documents: (1) the KCKPD's "*Giglio* and/or "*Brady*" lists[5] and communications related to those lists; (2) the Internal Affairs records for officers accused of theft or dishonesty; and (3) the mental health care records of defendants. Defendants oppose the motion, asserting first that plaintiffs failed to confer as required by D. Kan. Rule 37.2. Defendants also object to the specific requests based on relevance, overbreadth, and privilege. The court will address each objection in turn.[6]

### I. Failure to Comply with D. Kan. Rule 37.2

Before reaching the merits of the motion, the court must review the moving parties' compliance with federal and local rules requiring conference prior to filing a discovery motion. Defendants argue that plaintiffs have failed to comply because no verbal communication occurred between counsel.

Federal Rule of Civil Procedure 37(a)(1) and D. Kan. Rule 37.2 both require a moving party to certify that a conference was conducted regarding the discovery dispute prior to seeking court action. The "reasonable effort to confer with the opposing counsel" required by D. Kan. Rule 37.2 specifically necessitates "*more than* mailing or faxing a letter to opposing counsel." The rule "contemplates a conference, either face-to-face or by telephone."[7] The purpose of the conference is that parties should make a genuine effort to resolve their dispute without court intervention, by "determining

---

[5] "*Giglio*/*Brady*" is a shorthand reference to *Giglio v. United States*, 405 U.S. 150 (1972) and/or *Brady v. Maryland*, 373 U.S. 83 (1963).
[6] The requests are addressed in the order presented in the parties' briefing.

precisely what the requesting party is actually seeking; what responsive documents or information the discovery party is reasonably capable of producing, and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention."[8] The parties' briefing makes clear that counsel corresponded only by letter. Though the letters invite one another to confer, neither party suggests that any discussion actually took place. The court therefore finds that plaintiffs have failed to satisfy the requirements of D. Kan. Rule 37.2.

Despite this lack of compliance, the court has discretion to decide a motion to compel on the merits even when the duty to confer has not been fulfilled.[9] Though the court is inclined to deny plaintiffs' motion, the parties did exchange substantive views on the dispute through their written correspondence. Under such circumstances, the court will consider the substance of plaintiffs' motion.[10]

## II. Requests Nos. 2 through 4

Plaintiff's Request No. 2 seeks "[a]ny and all '*Giglio* lists' maintained by the [KCKPD] during the ten-year period prior to the date of [defendants'] response."[11]

---

[7] *Stephenson v. Young*, 2010 WL 4961709, at *2 (D. Kan. Nov. 29, 2010).
[8] *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. Oct. 1, 1999) (citing D. Kan. Rule 37.2).
[9] *See White v. Graceland College Ctr. for Prof. Dev. & Lifelong Learning, Inc.*, 2009 WL 722056, at *2 (D. Kan. March 18, 2009); *Stephenson v. Young*, 2010 WL 4961709, at *2.
[10] Although the court will consider the motion, plaintiffs are strongly advised to "reasonably confer" in compliance with D. Kan. Rule 37.2 before filing any future motions.
[11] The requests at issue, with defendants' responses, are included in plaintiff's memorandum as Exhibit C. (Doc. 254.)

Request No. 3 seeks any communications between the KCKPD and the Wyandotte County District Attorney's Office during the same 10-year period "relating to the *Giglio* lists." Request No. 4 seeks similar communications for the same time frame, "relating to *Giglio* . . . or *Brady*."

> Defendants objected to the requests as:
>
> irrelevant and . . . not reasonably calculated to lead to the discovery of admissible evidence. Defendants additionally object as this request seeks confidential department information of employees of the Defendant Unified Government and unnecessarily intrudes upon such employees' privacy interests. Defendants also object to this request as it is vague and ambiguous as to the phrase "Giglio lists." . . . This information and the documents requested are not reasonably likely to be admissible or relevant to any of Plaintiffs' asserted claims or Defendants' defenses.[12]

In their response to the motion, defendants repeat all objections in conclusory fashion, but specifically base their objections on overbreadth and relevancy.[13] In part, defendants argue that this court's May 16, 2013 order (Doc. 258) should extend to all *Giglio* or *Brady* materials, and therefore the court should find plaintiffs' request for those materials to be overly broad.[14] Plaintiffs respond that defendants misconstrue the previous Order, and that this court merely held that materials sought from the earlier subpoena to

---

[12] Defendants offered this objection to Request No. 2, and then objected to Requests Nos. 3 and 4 by referring to this objection.

[13] Defendants also argue the lack of probative value of the requested information and cite to the balancing test of Fed. R. Evid. 403. This argument was not presented in defendants' initial objections and is therefore waived. *See Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005), *infra* note 23.

[14] Memorandum and Order (Doc. 258) granted the United States' (a non-party) motion to quash and granted in part and denied in part Gorman's (a non-party) motion to quash and for protective order. The court found "plaintiffs' request for **any** *Giglio* or *Brady* material associated with KCKPD officers is overly broad and should be denied."

Wyandotte County District Attorney Jerry Gorman were protected by the deliberative process privilege which is inapplicable to the current requests.

In Gorman's motion to quash, his argument regarding overbreadth was never addressed by the plaintiffs, and the court found the request for *Giglio* or *Brady* material overbroad.[15] Because the current motion involves separate discovery requests aimed at the KCKPD and its communications with the district attorney's office, the court does not go so far as to generally extend its ruling to all *Giglio/Brady* materials. Though the court would be inclined to find the current requests overbroad, because they request "any and all" lists and communications for the past ten years without narrowing the requests to information regarding the parties or to identified witnesses, a ruling on overbreadth is unnecessary because plaintiffs' requests otherwise fail for lack of relevance.

Plaintiffs' relevance argument is misguided. Plaintiffs assert that "discovery should be allowed unless it is clear that the information sought can have no possible bearing on the subject matter."[16] Plaintiffs accurately state the standard for relevance under the former federal rules of civil procedure; however, the scope of discovery under Fed.R.Civ.P. 26(b)(1) was substantially amended in April 2000 (effective December 1, 2000) and is limited to the parties' "claims and defenses." Plaintiffs' reliance on a discovery standard and related case law that was abrogated by amendments to the federal

---

[15] *See* Gorman's motion (Doc. 212) and this court's order (Doc. 258, at 8).
[16] Pls.' Mem. Supp., Doc. 254 at 6 (citing *Beach v. City of Olathe*, 2000 WL 960808 (D. Kan. 2000).

6

rules of civil procedure is improper.[17] However, if a request is not relevant to the claims and defenses, Fed.R.Civ.P. 26(b)(1) does provide for a second level of scrutiny and "*[f]or good cause*, the court *may* order discovery of any matter relevant to the subject matter involved in the action."[18]

The *Brady* case stands for the proposition that the government must disclose material exculpatory evidence to a criminal defendant. The Supreme Court in *Giglio* expanded the *Brady* decision to require prosecutors to provide information to the defense which could tend to impeach a witness.[19] The relevance of the *Giglio*/*Brady* information to the claims and defenses is not facially apparent, because plaintiffs' claims are those of civil rights and torts for which *Giglio* and *Brady* lists have no obvious relevance.

When the relevancy of requested discovery is not apparent, the party seeking the discovery has the burden to show its relevance.[20] Plaintiffs assert relevance for "multiple reasons," but then provide only conclusions, not reasons, in seven sentences. Plaintiffs argue that (1) the *Giglio* list identifies potential witnesses that the KCKPD has already determined have credibility issues, and that evidence is discoverable as potential impeachment evidence; and (2) the list is relevant to plaintiffs' damages, because

---

[17] The parties are referred to this court's previous order of April 29, 2013, wherein defendants' relevancy argument was denied on this same basis. (Doc. 248 at 3-4.)
[18] Emphasis added. *See Layne Christensen Co. v. Bro-Tech Corp.*, 2011 WL 4688836, at *2 (D. Kan. Oct. 6, 2011) *reconsideration denied*, 2011 WL 6934112 (D. Kan. Dec. 30, 2011); *see also Solis v. LaFamilia Corp*, 2012 WL 1906508, *6 (D.Kan. May 25, 2012) (citing Fed.R.Civ.P. 26(b)(1)).
[19] *See Brady*, 373 U.S. 83; *Giglio*, 405 U.S. 150 (discussed in *United States v. Pickard*, 2009 WL 939050, at *5 (D. Kan. Apr. 6, 2009)).

7

plaintiffs are entitled to know the impact their inclusion on the list might have on their careers. No explanation is provided as to how that impact would be known to them simply by the disclosure of the lists or accompanying communications.

Plaintiffs' sole citation to authority is readily distinguishable from the facts at hand. The court in *Layne Christensen* did find that impeachment information may be discoverable, but reached that conclusion as to the criminal convictions of the named parties and designated witnesses. The court specifically notes that "to warrant a request for information about the *criminal histories of non-party witnesses* . . . the requesting party must have "a good faith reason to believe the individuals at issue have convictions and/or guilty pleas in their past."[21] The court held that discovery was only facially relevant to the extent it sought the criminal convictions of the defendants, along with the known conviction of a previously-designated witness. Though the plaintiff argued that the criminal histories of all witnesses were relevant for impeachment purposes, the court found that argument insufficient to carry the burden with regard to unidentified witnesses. The court further found that "[w]hile *convictions, sentences, and punishments* may be relevant in this case, the Court sees no relevance to information about criminal plea agreements, indictments, or *criminal accusations*."[22] Here, it is questionable whether any potential inclusion on a *Giglio* or *Brady* list even rises to the level of accusation.

---

[20] *Layne Christensen Co.*, 2011 WL 4688836, at*3 (*citing Mackey v. IBP, Inc.*, 167 F.R.D. 186, 193 (D.Kan.1996)).
[21] *Id.*, at *3.
[22] *Id.*, at *5 (emphasis added).

If relevance is not facially apparent to the claims and defenses of the parties, for good cause the court may extend its analysis to the subject matter of the action.[23] However, by providing only a few conclusory statements and the one inapplicable authority noted above, plaintiffs have not shown good cause for expanding the scope of discovery. Defendants' objections to Requests Nos. 2 through 4 on relevance are upheld, and plaintiffs' motion to compel responses to those requests is denied.

### III. Request No. 5

Plaintiffs' Request No. 5 seeks the production of the Internal Affairs files for "any" officer of the KCKPD accused of theft or dishonesty over the past 10 years, and "any communication" between the KCKPD and the District Attorney's office "relating to the allegation of theft or dishonesty." In response, defendants repeated the same objections as their response to Request No. 2. Additionally, defendants emphasize that, because plaintiffs did not assert "disparate treatment" claims, plaintiffs' request for internal affairs files is overly broad, not relevant, and seeks confidential information for non-party employees of the KCKPD.

The standard for relevance has been stated above, and is applied here. On its face, the requested discovery is not relevant. It is undisputed that the personnel, training and Internal Affairs files for all parties to this action have been produced. Plaintiffs argue that evidence of other accused officers who were not similarly arrested or placed on

---

[23] *Id*., at *2.

leave would support plaintiffs' claims that "their disparate treatment wrongly portrayed them as criminals." Plaintiffs do not claim impermissible discrimination or disparate treatment; therefore, any request for the information of non-parties is irrelevant on its face to the claims and defenses of the parties. Plaintiffs' burden to show relevance has not been met by their reliance on conclusory statements. Defendants' objection on relevance is upheld, and plaintiffs' motion to compel production responsive to Request No. 5 is denied.

## IV. Request No. 18

Plaintiffs' initial Request No. 18 seeks "[a]ll records of any physician, psychologist, counselor or other mental health care professional who has evaluated or treated any of the Defendants for any mental health issue in relation to the incidents which are the basis of Plaintiffs' Complaints." Defendants object to this on relevancy and overbreadth. Defendants also assert an expectation of privacy argument, but because that objection was not timely raised in defendants' initial responses, the objection is therefore waived.[24]

Defendants also assert the physician-patient and psychotherapist-patient privileges. The psychotherapist-patient privilege recognized by the Supreme Court in *Jaffee v. Redmond* concerned statements by an officer made to her therapist during the course of

---

[24] *Cardenas*, 230 F.R.D. at 621 ("It is also well settled that when a party fails to assert an objection in its initial response to the discovery request and raises it for the first time in response to a motion to compel, the objection is deemed waived.").

counseling sessions which followed a shooting incident.[25] Concluding that successful treatment requires a confidential relationship where the patient is willing to provide frank and complete disclosure of facts, emotions, memories, and fears, the Supreme Court held that

> confidential communications between a licensed psychotherapist and her patients in the course of *diagnosis or treatment* are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.[26]

Here, plaintiffs specifically seek records of any professional "who has *evaluated* or *treated*" the defendants. Those records squarely fall within the privilege articulated in *Jaffee*. Therefore, any records of diagnosis or treatment are privileged.

Plaintiffs emphasize for the first time in their reply brief that through their "golden rule" letter, they properly narrowed the request to include only a privilege log, to determine applicability of privilege, and any non-privileged summaries of the nature ordered produced by the court in *Utter v. Thompson*.[27] In *Utter*, this court allowed a doctor's recommendation of fitness for duty to be disclosed separately from diagnosis and treatment records because the information was not protected by any privilege.[28] While such standard may be applicable here, plaintiffs' requests again fail for lack of relevance.

The standard for relevancy has been discussed above and will not be repeated. In a one-sentence argument, plaintiffs assert that any treatment of defendants for similar

---

[25] *Jaffee v. Redmond,* 518 U.S. 1 (1996).
[26] *Id*. at 15.
[27] *Utter v. Thompson*, 2013 WL 875506, at *2-3 (D. Kan., March 7, 2013).
[28] *Id*., at *3.

mental health issues following plaintiffs' arrests would bolster plaintiffs' damage claims. Plaintiffs' conclusory statement is not adequate to meet their burden to show relevance. Defendants' objection on relevance is upheld, and plaintiffs' motion to compel production responsive to Request No. 18 is denied.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 253)** is **DENIED**, consistent with the rulings herein.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 20th day of August 2013.

S/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge